**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| IN RE | BK. NO. 16-00093-5-SWH |
| **JOYCE ANN FRINK fka JOYCE KEEL, fka JOYCE FRINK CAMPBELL,** | **CHAPTER 7** |
| **DEBTOR.** | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-1, its assignees and/or successors in interest ("Movant" herein) alleges as follows:

1.      That on or about January 7, 2016, the above named Debtor filed her Chapter 7 Petition in Bankruptcy with this Court.

2.      Movant is the current payee of promissory note dated April 25, 2000 in the principal amount of $76,000.00 ("Note" herein) secured by a senior deed of trust of same date ("Deed of Trust" herein) upon property generally described as **178 Grist Road, Township of Chadbourn, North Carolina 28431** and legally described as set forth in the Deed of Trust ("Property" herein).  Movant was assigned the beneficial interest in said Deed of Trust by an Assignment of Deed of Trust dated November 14, 2017.  Copies of the Note, Deed of Trust, and Assignments are attached hereto as **Exhibit "A"** and made a part hereof.

3.      Movant is informed and believes, and, based upon such information and belief, alleges that title to the subject Property is currently vested solely in the name of the Debtor.

1

4.      Movant will seek leave of Court to specify any further encumbrances against the subject Property at the time of trial/hearing.

5.      As of October 25, 2018, the outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $36,969.94 |
| Interest from 08/01/15 to 11/16/18 | $4,179.59 |
| Corporate Advances | $255.75 |
| Deferred Principal | $16,985.75 |
| Late Charges | $48.74 |
| Escrow Advance Balance | $2,645.25 |
| Minimum Outstanding Obligations | $61,085.02 |

6.      In addition to the other amounts due to Movant reflected herein, as of the date hereof, in connection with seeking the relief requested in the Motion, Movant has also incurred $681.00 in legal fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

7.      The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 23 | 09/01/2015 | 07/01/2017 | $268.33 | $6,171.59 |
| 12 | 08/01/2017 | 07/01/2018 | $290.61 | $3,487.32 |
| 4 | 08/01/2018 | 11/01/2018 | $293.44 | $1,173.76 |
| | | | Total: | $10,832.67 |

8.      Debtor is surrendering the property per the Statement of Intention.

9.      Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Deed of Trust; however, Movant is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

10.     This Movant is informed and believes, and based upon such information and belief alleges that, absent this Court's Order allowing this Movant to proceed with the pending foreclosure, Movant's security will be significantly jeopardized and/or destroyed.

11.     Based upon the foregoing, Movant alleges that it is not adequately protected, that the subject Property is not necessary to effectuate Debtor's rehabilitation, and that it would be unfair and inequitable to delay this Movant in the foreclosure of Movant's interest.  Movant urges that this Court issue an Order herein permitting this Movant to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

12.     The commercially reasonable value of the Property is approximately $58,000.00, as evidenced by the Debtor's Schedules A/B and D, attached hereto as **Exhibit "B"** and made a part hereof.

13.     Algernon L. Butler, III has been appointed by this Court as the Chapter 7 Trustee in this instant Bankruptcy proceeding.  By virtue of his position as Trustee of the estate of Debtor herein, he holds title to the subject Property in that capacity.  To the extent the relief sought herein is granted, Algernon L. Butler, III, Trustee, is bound by any such judgment.

14.     This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. §§ 362(d)(1) and (d)(2).

WHEREFORE, Movant prays judgment as follows:

1.      For an Order granting relief from the Automatic Stay, permitting this Movant to

move ahead with foreclosure proceedings under Movant's Deed of Trust and to sell the subject Property under the terms of said Deed of Trust, including necessary action to obtain possession of the Property.

      2.     For such Order regarding adequate protection of Movant's interest as this Court deems proper.

      3.     For attorneys' fees and costs of suit incurred herein.

      4.     For an Order waiving the 14-day stay described by Bankruptcy Rule 4001(a)(3).

      5.     For an Order that, in addition to foreclosure, permits activity necessary to obtain possession of said collateral; therefore, all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtor.

      6.     For such other relief as this Court deems appropriate.

Dated: 11/26/2018

                                   SPROUSE LAW FIRM, PLLC
                                   Attorneys for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-1

                                   BY:  /s/ James W. Sprouse, Jr.
                                         James W. Sprouse, Jr.
                                         N.C. Bar No.: 26767
                                       3101 Poplarwood Court, Suite 115
                                       Raleigh, NC  27604
                                       (919) 954-1900
                                       jsprouse@sprousefirm.com
                                       K.052-844.NF

Redacted

## BALLOON NOTE
### (Fixed Rate)

Borrower(s):   JOYCE KEEL and DANIELLE FRINK

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| April 25, 2000 | CHADBOURN, | NC |
|---|---|---|
| [Date] | [City] | [State] |

178 GRIST ROAD, Chadbourn, Township of CHADBOURN, NC  28431
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $76,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is NEW JERSEY MORTGAGE AND INVESTMENT CORP.,   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.750%.
   After any default described in Section 6(B) of this Note, I will pay interest at a yearly rate of 9.750% or such higher amount as may be permitted by applicable law. This default interest rate will continue after the Note Holder obtains legal judgment against me.

**3.   PAYMENTS**
   **(A) Time and Place of Payments**
   During the term of this loan, on the 2nd day of each month beginning June 2, 2000, I will make monthly payments of accrued interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on the maturity date of May 2, 2015, I still owe accrued interest and other charges under this Note, I will pay those amounts in full on that date as well as the entire unpaid principal balance of the loan.
   I will make my monthly payments at ONE PRESIDENTIAL BOULEVARD, SUITE 411 BALA CYNWYD, PA 19004, or at a different place if required by the Note Holder.
   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 652.96.

**4.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make a payment of principal at any time before it is due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
   The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.
   I may make a full prepayment or a partial prepayment at any time during the term of this loan without penalty.

**5.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charges for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.0% of my overdue payment or such higher amount as the Note Holder may choose to impose in accordance with applicable law. I will pay this late charge promptly but only once on each late payment.
   **(B) Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C) Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which

Redacted

EXHIBIT A

Redacted

has not been paid and all the interest that I owe on that amount. That date must be at least 15 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. OTHER CHARGES**

**A. NSF Charge**

If I make a payment under this Note by check, negotiable instrument or other means and the payment is returned to the Note Holder unpaid, I agree to pay the Note Holder a charge for not sufficient funds (NSF charge) in the maximum amount permitted by applicable law.

**B. Administrative Charges**

Except as limited by applicable law, I agree to pay the Note Holder any administrative charge that the Note Holder may impose in connection with (1) my failure to comply with the terms and conditions of the Note and (2) the release or satisfaction of any mortgage, financing statement or other security instrument appearing on the public record which relates to my obligations under this Note.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _Joyce Keel_ | (Seal) |
| JOYCE KEEL | Borrower |
| _Danielle Frink_ | (Seal) |
| DANIELLE FRINK | Borrower |
| _____ | (Seal) |
| | Borrower |
| _____ | (Seal) |
| | Borrower |
| _____ | (Seal) |
| | Borrower |
| _____ | (Seal) |
| | Borrower |

Redacted

Loan Number: Redacted

Investor Loan. _____    FB_PRA

Redacted

**After Recording Return To:**

_____

_____

_____

_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

### HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"):  Joyce Ann Campbell Danielle Frink

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 4/25/2000

Loan Number: Redacted

Property Address: 178 Grist Road Chadbourn, NC 28431 ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.**  I certify, represent to Servicer and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

    H.  In cases where I received a discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A.  TIME IS OF THE ESSENCE under this Agreement;

    B.  If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

    C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail    to    meet    any    one    of    the    requirements    under    this    Agreement.

OLS Form (rev. 5/11)
Redacted

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 8/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid on 8/1/2012 will be waived. The Loan Documents will be modified and the first modified payment will be due on 8/1/2012.

   A. The new Maturity Date will be: 7/1/2052.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $58,335.76 (the "New Principal Balance").

   C. $16,985.75 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $6,085.75 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 5/1/2012, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $41,350.01. Interest at the rate of 3.000% will begin to accrue on the Interest Bearing Principal Balance as of 8/1/2012 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 8/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5.0 | 3.000% | 8/1/2012 | $148.03 | $121.15, adjusts annually after year 1 | $269.18, adjusts annually after year 1 | 8/1/2012 | 60 |
| 6 | 4.000% | 7/1/2017 | $170.31 | Adjusts Annually | Adjusts Annually | 8/1/2017 | 12 |
| 7-Loans Maturity | 4.125% | 7/1/2018 | $173.14 | Adjusts Annually | Adjusts Annually | 8/1/2018 | 408 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | Adjusts Annually | Adjusts Annually | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

Redacted

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.   If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items."  I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D.  I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount.

Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA.  Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge.

OLS Form (rev. 5/11)
Redacted
NMLS# 1852

Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.  That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.  That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.  If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.  That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void

L.  Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.  Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026  Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling                    the                                  mortgage                                          loan.

Page 4 of 8

OLS Form (rev. 5/11)
Redacted

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → *Joyce Ann Campbell*    *06, 27, 12*  Date
Joyce Ann Campbell

State of North Carolina
County of *New Hanover*    )

On *6/27/12*    before me, *Regina T James*    personally appeared
*Joyce Ann Campbell*    , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of North Carolina that the foregoing paragraph is true
and correct. WITNESS my hand and official seal.

Signature *Regina J James* (Seal)
Print Name: *Regina T James*
Commission expiration date *1/25/2017*

Personally Known___✔___ OR Produced Identification_____
Type of Identification Produced_____

---

Sign Here → *Danielle Frink*    *06 , 27 , 12*  Date
Danielle Frink

State of North Carolina
County of *New Hanover*    )
On *6/27/12*    before me, *Regina T James*    personally appeared
*Danielle Frink*    , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of North Carolina that the foregoing paragraph is true
and correct. WITNESS my hand and official seal.
Signature *Regina J James* (Seal)
Print Name: *Regina T James*
Commission expiration date *1/25/2017*

Personally Known___✔___ OR Produced Identification_____
Type    of    Produced_____

Page 5 of 8

OLS Form (rev. 5/11)
Redacted
NMLS# 1852

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → _____        _____/_____/_____ Date

State of North Carolina                    )
County of _____        )

On _____ before me, _____personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of North Carolina that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____ (Seal)
Print Name: _____
Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____
Type of Identification Produced_____

Sign Here → _____        _____/_____/_____ Date

State of North Carolina                    )
County of _____        )
On _____ before me, _____personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of North Carolina that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: _____
Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____
Type of Identification Produced_____

Servicer    JUL 27 2012        BY
_____        Maria Brown
Date                            Contract Management Modifications Coordinator

If applicable: _____
      Mortgage    Electronic    Registration    Systems,    Inc.    –    Nominee    for    Servicer

Page 6 of 8                                    OLS Form (rev. 5/11)
Redacted

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"):  Joyce Ann Campbell Danielle Frink

Servicer ("Servicer"):

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number:        Redacted

Property Address:        178 Grist Road Chadbourn, NC 28431

THIS BALLOON PAYMENT DISCLOSURE is made this 9 day of April, 2012, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement.  The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of  $2,028.58 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments.  This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history and adherence to Section 3(C) of the Agreement. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 8/1/2012 up to 5/1/2013 | $16,985.75<br>- NO ADJUSTMENT |
| 5/1/2013 up to 5/1/2014 | $14,957.17 |
| 5/1/2014 up to 5/1/2015 | $12,928.59 |
| 5/1/2015 up to 7/1/2052 | $10,900.00 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:  AN INSTALLMENT OF UP TO $16,985.75 WILL BE DUE AND PAYABLE IN FULL ON 7/1/2052, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. DEPENDING ON THE BORROWER'S ELIGIBILITY UNDER SECTION 3(C), THIS AMOUNT MAY DECREASE. The balloon payment on the loan modification I have applied for is due 480 months from the effective date of the modification.

*Notice required by North Dakota law:*

CAUTION TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN.   KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION         THAT         YOU         OBTAIN         AT         THIS         TIME.

OLS Form (rev. 5/11)
Redacted

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

Borrower _____ SIGN ← _____6-27-12_____
                                                    Date

Borrower _____ SIGN ← _____6-27-12_____
                                                    Date

OLS Form (rev. 5/11)
Redacted
NMLS # 1852

Redacted

Redacted

DRAWN BY & MAIL TO:
ANDRÉ F. BARRETT
ATTORNEY AT LAW
4140 FERNCREEK DRIVE SUITE 703
FAYETTEVILLE, NC 28314

Columbus County--Register of Deeds
Frances V. Burge
Inst # 0004064    Book   621 Page 332
05/30/2000 11:38am  Rec#

------------------|SPACE ABOVE THIS LINE FOR RECORDING DATA|------------------

PARCEL #: 13-22362

Redacted

Prepared By:  marion schoenenberger
NEW JERSEY MORTGAGE AND INVESTMENT CORP.
5 BECKER FARM ROAD
ROSELAND, NJ 07068

# DEED OF TRUST

THIS DEED OF TRUST (" Security Instrument" ) is made on April 25, 2000. The grantor is JOYCE KEEL and DANIELLE FRINK (" Borrower" ). The trustee is JEFFREY M. RUBEN (" Trustee" ). The beneficiary is NEW JERSEY MORTGAGE AND INVESTMENT CORP. which is organized and existing under the laws of THE STATE OF NEW JERSEY, and whose address is 5 BECKER FARM ROAD ROSELAND, NJ 07068 (" Lender " ). Borrower owes Lender the principal sum of Seventy Six Thousand Dollars (U.S. $76,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument (" Note" ), which provides for monthly payments of interest only, with the full debt, if not paid earlier, due and payable on May 2, 2015. (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT." THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocable grants and convey s to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in Columbus County, NORTH CAROLINA:

## SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of:         178 GRIST ROAD                          Township of
                                                                          CHADBOURN
                                          [Street]                          [City]
North Carolina                            28431                       ("Property Address");
                                        [Zip code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "property.".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of records. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (" Funds" ) for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or Property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called " Escrow Items" . Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA" ), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

PKT_NC_1_B.DOC
NC_MORT_1_B.DOC

Page 1 of 6

Page 1 of 1
7-9-07
MDC

24

Inst # 0004064  Book 621 Page: 333

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case, Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good

PKT_NC_1_B.DOC
NC_MORT_1_B.DOC

Page 2 of 6

Page 2 of 7
7-9-07
MDC

Redacted

Inst # 0004064  Book 621 Page: 334

faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

PKT_NC_1_B.DOC
NC_MORT_1_B.DOC                    Page 3 of 6

page 3 of 7
7-9-07
MBC

Redacted

Inst # 0004064  Book 621 Page: 335

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, " Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to

page 4 of 7
7-9-01
MBC

Inst # 0004064  Book 621 Page: 336

cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the
default must be cured; and(d) that failure to cure the default on or before the date specified in the notice may
result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall
further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure
proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the
default is not cured on or before the date specified in the notice, Lender at its option may require immediate
payment in full of all sums secured by this Security Instrument without further demand and may invoke the
power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all
expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to,
reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable
law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such
notices to Borrower and to other persons as applicable law may require. After the time required by applicable
law and after publication of the notice of sale, Trustee, without demand on Borrower shall sell the Property at
public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in
one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at
any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or
warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of
the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all
expenses of the sale, including, but not limited to, Trustee's fees of   9.750% of the gross sale price; (b) to all
sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The
interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness
evidenced by the Note.

**22. Release.**  Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel
this Security Instrument without charge to Borrower.  If Trustee is requested to release this Security Instrument, all
notes evidencing debts secured by this Security Instrument shall be surrendered to Trustee.  Borrower shall pay any
recordation costs.

**23. Substitute Trustee.**  Lender may from time to time remove Trustee and appoint a successor trustee to any
Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded.
Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred
upon Trustee herein and by applicable law.

**24. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded
together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into
and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a
part of this Security Instrument.  [Check applicable box(s)]

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider      ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider                ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ V.A. Rider                   ☒ Other(s) [specify] RIDER "A" LEGAL DESCRIPTION

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            JOYCE KEEL                         Borrower

                                            _____ (Seal)
_____          DANIELLE FRINK                     Borrower

                                            _____ (Seal)
                                                                               Borrower

                                            _____ (Seal)
                                                                               Borrower

                                            _____ (Seal)
                                                                               Borrower

                                            _____ (Seal)
                                                                               Borrower

─────────────────────[Space Below This Line For Acknowledgment]─────────────────────

STATE OF NORTH CAROLINA                }
                                       } SS:
COUNTY OF COLUMBUS                     }

PKT_NC_1_B.DOC
NC_MORT_1_B.DOC                                Page 5 of 6

Page 5 of 7
7-9-07
MBC

Redacted

Inst # 0004064   Book 621 Page: 337

I, *Rose M. Phenicie*, a Notary Public in and for the county and state aforesaid, do hereby certify that JOYCE KEEL and DANIELLE FRINK personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal the 25th day of April, 2000



Notary Public

My Commission expires: 01-31-2004

NORTH CAROLINA   COLUMBUS COUNTY
The foregoing (or annexed) certificate(s) of

*Rose M. Phenicie*

Notary(s) Public is (are) certified to be correct. This instrument and this certificate are duly registered at the date and time and in the book and page shown on this first page hereof.

*Frances V. Burns*                    Register of Deeds
By *Tambra H. Whitehead*      Asst./Deputy Register of Deeds

Ret: André Barrett

Page 6 of 7
7-9-07
mox

Inst # 0004064    Book 621 Page: 338

# EXHIBIT A

Lying and being in Chadbourn Township and being bounded now or formerly on the North and West by other lands of Paul A. Eiggens and wife, Annette Eiggens and on the East by S.R. 1443 and being more particularly described as follows:

Beginning at an iron stake said stake being located in the Western margin of S.R. 1443 and said stake being located on a tie-line South 06 degrees 06 minutes 00 seconds West 779.38 feet from the intersection of U.S. Highway 76 and S.R. 1443 and runs thence from the beginning stake and with the Western margin of S.R. 1443 South 06 degrees 06 minutes 00 seconds West 100 feet to an iron stake; and runs thence North 78 degrees 38 minutes 00 seconds West 200 feet to an iron stake; and runs thence North 06 degrees 06 minutes 00 seconds East 100 feet to an iron stake; and runs thence South 78 degrees 38 minutes 00 seconds East 200 feet to the point of beginning and containing 0.46 acres more or less.

NORTH CAROLINA COLUMBUS COUNTY,
Kandance H. Whitehead, Register
of Deeds of Columbus County,
N.C. do hereby certify that
the foregoing is a true
and exact copy as recorded
in Book 621 Page 332,
Columbus County Registry.
Witness my hand and official
seal, this 9 day of July
20 01    Kandance H. Whitehead
Kandance H. Whitehead
Register of Deeds
By: Michelle Cayleigh
Assistant / Deputy

Page 7 of 7
7-9-07
MRC

COLUMBUS COUNTY NC FEE $26.00
PRESENTED & RECORDED
02/22/2016 11:29:36 AM

**KANDANCE H. BULLOCK**

REGISTER OF DEEDS
BY: VICKI HOWELL
DEPUTY

**BK: RB 1125**
**PG: 634 - 634**

NORTH CAROLINA COLUMBUS COUNTY
The foregoing or annexed certificate(s) of
_____MICHAEL C. JOHNSTON_____

Notary(y)(ies) Public (has)(have) been verified
to have a Signature, seal, or stamp, and an
expiration date. This Instrument and this
certificate are duly registered at the Date
and time and in the book and page shown on the
First page thereof.
Kandance H. Bullock *Register of Deeds*
By: Vicki Howell Deputy

Prepared By: Amber R Wilson,  OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID
Redacted
_____
                                                        Redacted
Columbus, North Carolina            CORPORATE ASSIGNMENT OF DEED OF TRUST
Redacted

Date of Assignment: January 19th, 2016
Assignor: AMERICAN BUSINESS MORTGAGE SERVICES, INC. f/k/a NEW JERSEY MORTGAGE AND
INVESTMENT CORPORATION  BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC at 1661
WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL  33409
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE AND CUSTODIAN FOR
OCWEN REAL ESTATE ASSET LIQUIDATING TRUST 2007-1, ASSET-BACKED NOTES, SERIES 2007-1 at C/O
OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL  33409

Executed By: JOYCE KEEL AND DANIELLE FRINK  To: NEW JERSEY MORTGAGE AND INVESTMENT CORP
Date of Deed of Trust: 04/25/2000 Recorded:  05/30/2000  In Book/Reel/Liber: 621 Page/Folio: 332 as Instrument
No.: 0004064  In the County of Columbus, State of North Carolina.

Property Address: 178 GRIST ROAD, TOWNSHIP OF CHADBOURN, NC  28431

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $76,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

AMERICAN BUSINESS MORTGAGE SERVICES, INC. f/k/a NEW JERSEY MORTGAGE AND INVESTMENT
CORPORATION  BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
On ____2/3/2016_____

By: ___Victoria Strauss___
         Victoria Strauss , Vice President

STATE OF ___Pennsylvania___
COUNTY OF ___Montgomery___

On ___2/3/2016___, before me, ___Michael C. Johnston___, a Notary Public in and for ___Montgomery___, in
the State of ___Pennsylvania___ personally appeared ___Victoria Strauss___ Vice President of AMERICAN
BUSINESS MORTGAGE SERVICES, INC. f/k/a NEW JERSEY MORTGAGE AND INVESTMENT CORPORATION
BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC, personally known to me or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument and acknowledged the assignment of the above-referenced Deed of Trust.

WITNESS my hand and official seal,

___Michael C. Johnston___          COMMONWEALTH OF PENNSYLVANIA
Notary Expires: 4/10/2018                        NOTARIAL SEAL
                                          Michael C. Johnston, Notary Public
                                          Upper Dublin Twp., Montgomery County
                                          My Commission Expires April 10, 2018

                                                      (This area for notarial seal)

Recording Requested By: OCWEN LOAN SERVICING, LLC
When Recorded Return To: OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID
Redacted

Submitted electronically by "Brock & Scott, PLLC FC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Columbus County Register of Deeds.

**2017005177**

COLUMBUS COUNTY NC FEE $26.00
NO TAXABLE CONSIDERATION
PRESENTED & RECORDED
10/30/2017 03:08:18 PM
**KANDANCE H. BULLOCK**
REGISTER OF DEEDS
BY: REGINA MARCELLINO
DEPUTY
**BK: RB 1166**
**PG: 701 - 703**

When Recorded Return To: OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

Prepared By: Zorona Anderson, OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402 800-746-2936

Redacted

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Columbus, North Carolina

Redacted

Date of Assignment: September 29,2017
Assignor: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE AND CUSTODIAN FOR OCWEN REAL ESTATE ASSET LIQUIDATING TRUST 2007-1, ASSET-BACKED NOTES, SERIES 2007-1, at 1761 EAST ST ANDREW PLACE, SANTA ANA, CA 92705

Assignee: OMAT I REO HOLDINGS, LLC, at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: JOYCE KEEL AND DANIELLE FRINK To: NEW JERSEY MORTGAGE AND INVESTMENT CORP
Date of Deed of Trust: 04/25/2000 Recorded: 05/30/2000 in Book/Reel/Liber: 621 Page/Folio: 332 as Instrument No.: 0004064 In the County of Columbus, State of North Carolina.

Property Address: 178 GRIST ROAD, TOWNSHIP OF CHADBOURN, NC 28431

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $76,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE AND CUSTODIAN FOR OCWEN REAL ESTATE ASSET LIQUIDATING TRUST 2007-1, ASSET-BACKED NOTES, SERIES 2007-1 at,1761 EAST ST ANDREW PLACE, SANTA ANA, CA 92705
On _October 6, 2017_

By: _____ Vice President
Ronaldo Reyes
Vice President

Submitted electronically by "Security Connections Inc"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Columbus County Register of Deeds.

Redacted

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _California_
COUNTY OF _Orange_
On _10-6-2017_ , before me, _Dennis K. Dickey JC_ , a Notary Public in and for _Orange_ in
the State of _California_ , personally appeared _Ronaldo Reyes_ , Vice President being by me duly
sworn and duly executed of DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE AND
CUSTODIAN FOR OCWEN REAL ESTATE ASSET LIQUIDATING TRUST 2007-1, ASSET-BACKED NOTES,
SERIES 2007-1, at 1761 EAST ST ANDREW PLACE, SANTA ANA, CA 92705, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within in-
strument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that
by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, ex-
ecuted the instrument and acknowledged the assignment of the above-referenced Deed of Trust.

_See Attached_

WITNESS my hand and official seal,

_____

_____
Notary Expires: / /

(This area for notarial seal)

Recording Requested By: OCWEN LOAN SERVICING, LLC

Redacted

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California               )
County of ___Orange___            )

On __10-6-2017__ before me, __Dennis K. Dickey II, Notary Public__,
    *Date*                   *Here Insert Name and Title of the Officer*
personally appeared __Ronaldo Reyes__
                                 *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> DENNIS KEITH DICKEY II
> Notary Public – California
> Orange County
> Commission # 2188330
> My Comm. Expires Mar 26, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
           *Signature of Notary Public*

Place Notary Seal Above
——————————————— **OPTIONAL** ———————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Corp. Assignment of DOT__   Document Date: __10-6-2017__
Number of Pages: __1__   Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: __Ronaldo Reyes__ | Signer's Name: _____ |
| ☑ Corporate Officer — Title(s): __Vice President__ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: __Deutsche Bank__ __National Trust Company__ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

NORTH CAROLINA COLUMBUS COUNTY
The foregoing or annexed certificate(s) of
__DENNIS KEITH DICKEY II__
_____

Notary(y)(ies) Public (has)(have) been verified
to have a Signature, seal, or stamp, and an
expiration date. This instrument and this
certificate are duly registered at the Date
and time and in the book and page shown on the
First page thereof.
Kandance H. Bullock Register of Deeds
By: Regina Marcellino Deputy

Redacted
Redacted

**2017005829**
COLUMBUS COUNTY NC FEE $26.00
PRESENTED & RECORDED
12/12/2017 04:13:01 PM
KANDANCE H. BULLOCK
REGISTER OF DEEDS
BY: RITA M. KNOX
DEPUTY
BK: RB 1169
PG: 282 - 282

ᵗᵀH CAROLINA COLUMBUS COUNTY
foregoing or annexed certificate(s) of
_____Maria V Reyes_____

ᵤry(y)(ies) Public (has)(have) been verified
ave a Signature, seal, or stamp, and an
ration date. This Instrument and this
ificate are duly registered at the Date
time and in the book and page shown on the
t page thereof.
dance H. Bullock Register of Deeds
Rita M. Knox Deputy

When Recorded Return To: OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

Prepared By: Zorona Anderson, OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402 800-746-2936

CORPORATE ASSIGNMENT OF DEED OF TRUST

Columbus, North Carolina

Date of Assignment: 11/14/17
Assignor: OMAT I REO HOLDINGS, LLC, at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS OWNER TRUSTEE OF MATAWIN VENTURES TRUST SERIES 2017-1 at 1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL 33409

Executed By: JOYCE KEEL AND DANIELLE FRINK To: NEW JERSEY MORTGAGE AND INVESTMENT CORP.
Date of Deed of Trust: 04/25/2000 Recorded: 05/30/2000 in Book/Reel/Liber: 621 Page/Folio: 332 as Instrument No.: 00004064 In the County of Columbus, State of North Carolina.

Property Address: 178 GRIST ROAD, CHADBOURN, NC 28431

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $76,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

OMAT I REO HOLDINGS, LLC. by Ocwen Financial Corporation, a Florida Corporation it sole member
On 11/14/17

By:_____

STATE OF Florida
COUNTY OF Palm Beach

On 11/14/17, before me, Maria V Reyes, a Notary Public in and for County in the State of Florida, personally appeared _____, Vice President being by me duly sworn and duly executed of Ocwen Financial Corporation, a Florida Corporation it sole member for OMAT I REO HOLDINGS, LLC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the assignment of the above-referenced Deed of Trust.

WITNESS my hand and official seal,

_____
Notary Expires: 9/8/2020

MARIA V REYES
Notary Public - State of Florida
Commission # FF 992354
My Comm. Expires Sep 8, 2020
Bonded through National Notary Assn.

(This area for notarial seal)

Submitted electronically by "Security Connections Inc"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Columbus County Register of Deeds.

Fill in this information to identify your case and this filing:

Debtor 1    Joyce Ann Frink
            First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)  First Name   Middle Name          Last Name

United States Bankruptcy Court for the: Eastern District of North Carolina

Case number   16-00093=5

☑ Check if this is an
  amended filing

## Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**  178 Grist Road
Street address, if available, or other description

Chadbourn        NC    28431
City             State  ZIP Code

Columbus
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ 58,000.00                                 $ 58,000.00

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property
  (see instructions)

If you own or have more than one, list here:

**1.2.**  178 Grist Road
Street address, if available, or other description

Chadbourn        NC    28431
City             State  ZIP Code

Columbus
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☑ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ 4,500.00                                   $ 4,500.00

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property
  (see instructions)

EXHIBIT B

| Debtor 1 | Joyce Ann Frink | | | Case number (if known) 16-00093=5 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**1.3.** _____

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Street address, if available, or other description

_____

_____

City        State    ZIP Code

_____

County

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$_____   $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

**Other information you wish to add about this item, such as local property identification number:** _____

**2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.** ..................................................➔   $   62,500.00

---

## Part 2:  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

**3.1.** Make:  **GMC**

Model:  **Envoy**

Year:  **2004**

Approximate mileage:  **230,000**

Other information:

Not running. Engine problems

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$   300.00   $   300.00

If you own or have more than one, describe here:

**3.2.** Make:  _____

Model:  _____

Year:  _____

Approximate mileage:  _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**

$_____   $_____

| Debtor 1 | Joyce Ann Frink | | | Case number *(if known)* | 16-00093=5 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**3.3.** 
Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  $_____
**Current value of the portion you own?**  $_____

**3.4.** 
Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  $_____
**Current value of the portion you own?**  $_____

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

**4.1.** 
Make: _____
Model: _____
Year: _____
Other information:

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  $_____
**Current value of the portion you own?**  $_____

If you own or have more than one, list here:

**4.2.** 
Make: _____
Model: _____
Year: _____
Other information:

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  $_____
**Current value of the portion you own?**  $_____

---

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ...................................................➔ 

$ 300.00

---

| Debtor 1 | Joyce Ann Frink | | Case number (if known) 16-00093-5 |
|---|---|---|---|
| | First Name  Middle Name  Last Name | | |

## Part 3: Describe Your Personal and Household Items

**Do you own or have any legal or equitable interest in any of the following items?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☑ Yes. Describe.........
   | Kitchenware Items
   Location: 178 Grist Road, Chadbourn NC 28431 | $ 955.00 |

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe.........
   | Electronics - Computer
   Location: 178 Grist Road, Chadburn NC 28431 | $ 1,210.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe.........
   | | $ |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe.........
   | | $ |

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes. Describe.........
    | | $ |

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes. Describe.........
    | Clothing - Women
    Location: 178 Grist Road, Chadbourn, NC 28431 | $ 250.00 |

12. **Jewelry**
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☑ Yes. Describe.........
    | Jewelry -two necklaces | $ 200.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☑ No
    ☐ Yes. Describe.........
    | | $ |

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☑ No
    ☐ Yes. Give specific information. ............
    | | $ |

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ..................................................→  | $ 2,615.00 |

| Debtor 1 | Joyce Ann Frink | | | Case number (if known) | 16-00093=5 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Part 4:  Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

16. **Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes...................................................................................................................    Cash: ....................... $ _____65.00

17. **Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.....................

| | Institution name: | |
|---|---|---|
| 17.1. Checking account: | State Employees Credit Union | $ _____75.00 |
| 17.2. Checking account: | | $ _____ |
| 17.3. Savings account: | | $ _____ |
| 17.4. Savings account: | | $ _____ |
| 17.5. Certificates of deposit: | | $ _____ |
| 17.6. Other financial account: | | $ _____ |
| 17.7. Other financial account: | | $ _____ |
| 17.8. Other financial account: | | $ _____ |
| 17.9. Other financial account: | | $ _____ |

18. **Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.................

| Institution or issuer name: | |
|---|---|
| | $ _____ |
| | $ _____ |
| | $ _____ |

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific information about them.........................

| Name of entity: | % of ownership: | |
|---|---|---|
| | 0% % | $ _____ |
| | 0% % | $ _____ |
| | 0% % | $ _____ |

| Debtor 1 | Joyce Ann Frink | | | Case number (*if known*) 16-00093=5 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No
☐ Yes. Give specific   Issuer name:
information about
them......................

_____  $_____
_____  $_____
_____  $_____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☒ No
☐ Yes. List each         Type of account:        Institution name:
account separately.

401(k) or similar plan:  _____  $_____
Pension plan:            _____  $_____
IRA:                     _____  $_____
Retirement account:      _____  $_____
Keogh:                   _____  $_____
Additional account:      _____  $_____
Additional account:      _____  $_____

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☒ No
☐ Yes..........................         Institution name or individual:

Electric:                       _____  $_____
Gas:                            _____  $_____
Heating oil:                    _____  $_____
Security deposit on rental unit: _____  $_____
Prepaid rent:                   _____  $_____
Telephone:                      _____  $_____
Water:                          _____  $_____
Rented furniture:               _____  $_____
Other:                          _____  $_____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☒ No
☐ Yes..........................         Issuer name and description:

_____  $_____
_____  $_____
_____  $_____

| Debtor 1 | Joyce Ann Frink | | Case number *(if known)* 16-00093=5 |
|---|---|---|---|
| | First Name   Middle Name   Last Name | | |

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes .................................   Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521(c):

           \$_____

           \$_____

           \$_____

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
☐ Yes. Give specific information about them....       \$_____

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples*: Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes. Give specific information about them....       \$_____

**27. Licenses, franchises, and other general intangibles**
*Examples*: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes. Give specific information about them....       \$_____

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**

☑ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ......................

| | |
|---|---|
| Federal: | \$_____ |
| State: | \$_____ |
| Local: | \$_____ |

**29. Family support**
*Examples*: Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes. Give specific information.............

| | |
|---|---|
| Alimony: | \$_____ |
| Maintenance: | \$_____ |
| Support: | \$_____ |
| Divorce settlement: | \$_____ |
| Property settlement: | \$_____ |

**30. Other amounts someone owes you**
*Examples*: Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☐ No
☐ Yes. Give specific information.............       \$_____

| Debtor 1 | Joyce | Ann | Frink | | Case number *(if known)* | 16-00093=5 |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No
☐ Yes. Name the insurance company
    of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes. Give specific information.............  $

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☐ No
☑ Yes. Describe each claim. ...................  Proposed Actos Settlement Dated April 6, 2017    $    251,745.79

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No
☐ Yes. Describe each claim. ...................  $

**35. Any financial assets you did not already list**

☑ No
☐ Yes. Give specific information............  $

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**  →  $    251,885.79

| Part 5: | **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.** |
|---|---|

**37. Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.
☐ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☑ No
☐ Yes. Describe.......  $

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No
☐ Yes. Describe.......  $

| Debtor 1 | Joyce Ann Frink | | | Case number *(if known)* | 16-00093=5 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No
☐ Yes. Describe......                          $_____

**41. Inventory**

☑ No
☐ Yes. Describe......                          $_____

**42. Interests in partnerships or joint ventures**

☑ No
☐ Yes. Describe......

| Name of entity: | % of ownership: | |
|---|---|---|
| _____ | _____ % | $_____ |
| _____ | _____ % | $_____ |
| _____ | _____ % | $_____ |

**43. Customer lists, mailing lists, or other compilations**

☑ No
☐ Yes. **Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?**

    ☐ No
    ☐ Yes. Describe.......                   $_____

**44. Any business-related property you did not already list**

☑ No
☐ Yes. Give specific
    information .........                        $_____
                                             $_____
                                             $_____
                                             $_____
                                             $_____
                                             $_____

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** ................................................................... ➜    $             0.00

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

                                                  **Current value of the portion you own?**
                                                  Do not deduct secured claims or exemptions.

**47. Farm animals**
*Examples:* Livestock, poultry, farm-raised fish

☑ No
☐ Yes..........................                         $_____

Debtor 1   **Joyce Ann Frink**
　　　　　　First Name　　Middle Name　　Last Name

Case number *(if known)*  16-00093=5

48. **Crops—either growing or harvested**
- ☑ No
- ☐ Yes. Give specific information. ........... [　　　　　　　　　　　　] $ _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**
- ☑ No
- ☐ Yes ......... [　　　　　　　　　　　　] $ _____

50. **Farm and fishing supplies, chemicals, and feed**
- ☑ No
- ☐ Yes ........................ [　　　　　　　　　　　　] $ _____

51. **Any farm- and commercial fishing-related property you did not already list**
- ☑ No
- ☐ Yes. Give specific information. ........... [　　　　　　　　　　　　] $ _____

52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here ............ ➡ $ _____ 0.00

## Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership
- ☑ No
- ☐ Yes. Give specific information. ...........

$ _____
$ _____
$ _____

54. Add the dollar value of all of your entries from Part 7. Write that number here ................ ➡ $ _____ 0.00

## Part 8:   List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55. **Part 1: Total real estate, line 2** ................................................ ➡ | | $ 62,500.00 |
| 56. **Part 2: Total vehicles, line 5** | $ 300.00 | |
| 57. **Part 3: Total personal and household items, line 15** | $ 2,615.00 | |
| 58. **Part 4: Total financial assets, line 36** | $ 251,885.79 | |
| 59. **Part 5: Total business-related property, line 45** | $ _____ | |
| 60. **Part 6: Total farm- and fishing-related property, line 52** | $ _____ | |
| 61. **Part 7: Total other property not listed, line 54** | + $ _____ | |
| 62. **Total personal property.** Add lines 56 through 61. .............. | $ 254,800.79 | Copy personal property total ➡ + $ 254,800.79 |

63. **Total of all property on Schedule A/B.** Add line 55 + line 62 ......................

$ 317,300.79

Case 16-00093-5-SWH    Doc 156    Filed 01/26/18    Entered 01/26/18 14:53:13:24    Page 22 of 78

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Joyce Ann Frink** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NORTH CAROLINA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

<u>Official Form 106D</u>
# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** **John Donahue Automotive**<br>Creditor's Name<br><br>Hwy 130 East<br>Whiteville, NC 28472<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**2004 GMC Envoy 230,000 miles Not running. Engine problems.**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____ | **$5,544.00** | **$300.00** | **$5,244.00** |

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

Date debt was incurred    2015          Last 4 digits of account number    nown

| | | | | |
|---|---|---|---|---|
| **2.2** **Mygait**<br>Creditor's Name<br><br>1110 North Post Oak Road<br>Suite 310<br>Houston, TX 77055<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**Computer**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>■ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____ | $639.00 | $600.00 | $39.00 |

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    2014          Last 4 digits of account number    Redacted

| Debtor 1 | **Joyce Ann Frink** | | | Case number (if know) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.3 | **Ocwen Loan Servicing, LLC** | Describe the property that secures the claim: | $37,000.00 | $58,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**178 Grist Road Chadbourn, NC
28431  Columbus County
Single Family Residence - 178 Grist
Road, Chadbourn, NC
2,077 Square Foot Home
3 BR**

**PO Box 24781
West Palm Beach, FL
33416**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **First Mortgage**

Date debt was incurred    **1999**

Last 4 digits of account number    <span style="color:red">Redacted</span> __ __

| Add the dollar value of your entries in Column A on this page. Write that number here: | $43,183.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $43,183.00 |

**Part 2:**    List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name Address
**-NONE-**

On which line in Part 1 did you enter the creditor?    _____

Last 4 digits of account number    _____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| IN RE<br>**JOYCE ANN FRINK**<br>**FKA JOYCE KEEL,**<br>**FKA JOYCE FRINK CAMPBELL,**<br>          **DEBTOR.** | **BK. NO. 16-00093-5-SWH**<br><br>**CHAPTER 7** |

**CERTIFICATE OF SERVICE**

    I, James W. Sprouse, Jr., as attorney of record for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-1, hereby certify that on the 26th day of November, 2018, I served a copy of the Motion to Modify Stay and Notice of Motion by either electronic notice, in accordance with the local rules, or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, said envelope being addressed as follows:

Joyce Ann Frink
PO Box 3044
Myrtle Beach, SC 29578
Debtor

Terry B. Richardson, Esq.
209 Princess Street
Wilmington, NC 28401
Attorney for Debtor

Algernon L. Butler, III, Esq.
Butler & Butler, L.L.P.
P.O. Box 38
Wilmington, NC 28402
Trustee

Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main Street, Suite 200
Pensacola, FL 32502
Attorneys for the Trustee

    Dated: 11/26/2018

SPROUSE LAW FIRM, PLLC
Attorneys for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2017-1

    BY: /s/ James W. Sprouse, Jr.
        James W. Sprouse, Jr.
        N.C. Bar No.: 26767
        3101 Poplarwood Court, Suite 115
        Raleigh, NC 27604
        (919) 954-1900
        jsprouse@sprousefirm.com
        K.052-844.NF